Special Grand Jury Case.

Argued September 30, 1959. Before JONES, C. J., BELL, JONES, COHEN and BOK, JJ.

*Samuel Dash*, with him *Dash & Levy*, for petitioner.

*Juanita Kidd Stout*, Assistant District Attorney, with her *Victor H. Blanc*, District Attorney, for Commonwealth of Pennsylvania.

OPINION BY MR. JUSTICE BOK, October 6, 1959:

This is a petition for a writ of prohibition. It is directed primarily to the Honorable JOSEPH E. GOLD, a Judge of Court of Common Pleas No. 6 of Philadelphia County, and seeks to compel him to discharge and terminate the proceedings connected with a Special Grand Jury which he convened, while sitting in the Court of Oyer and Terminer and Quarter Sessions of the Peace, to investigate certain alleged criminal situations existing within the ranks of Local 107 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America.

Judge GOLD has filed a responsive answer, submitting himself to such order as this Court shall make.

The jury was convened as the result of a petition filed by the District Attorney of Philadelphia County. This petition alleged that the officers, agents and members of the union have been engaged in widespread and repeated criminal activities; that they have been investigated by a Committee of the United States Senate and independently by the District Attorney; that specific crimes have been committed, namely, fraudulently uttering and publishing a written instrument, assault and battery upon a member of the union, conspiracy to blackmail, threats to damage the property of farmers who deliver their products to the City, the exaction of tribute for unnecessary unloading services from people delivering perishable goods, and conspiracy to damage property and to commit assault and battery and larceny; that these specific crimes are part of a system of related crimes, past, present, and continuing; that they affect the public welfare and safety; and that such criminal activities do not lend themselves to detection and proof by the ordinary agencies of law enforcement.

Despite its general averments of widespread crime and conspiracy beyond the reach of law, the petition falls far short of what is required by way of pleaded facts.

The law concerning special investigating grand juries has been clear since *Case of Lloyd and Carpenter*, 3 Clark 188 (1845), when Judge KING laid down principles that have been quoted in almost every later case. Speaking of extraordinary modes of criminal procedure, he said: "The first of these is, where criminal courts of their own motion call the attention of grand juries to and direct the investigation of matters of general public import, which, from their nature and

operation in the entire community, justify such intervention. The action of the courts on such occasions rather bear on things than persons; the object being the suppression of general and public evils, affecting in their influence and operation communities rather than individuals and therefore, more properly the subject of general than special complaint. Such as great riots that shake the social fabric, carrying terror and dismay among the citizens; general public nuisances affecting the public health and comfort; multiplied and flagrant vices tending to debauch and corrupt the public morals, and the like . . . . But this course is never adopted in case of ordinary crimes, charged against individuals. Because it would involve, to a certain extent, the expression of opinion, by anticipation, on facts subsequently to come before the court for direct judgment; and because such cases present none of those urgent necessities which authorize a departure from the ordinary course of justice."

Most of the later cases involve investigations of public officials and departments, but in *The Matter of the Memorial of the Citizens' Association,* 8 Phila. 478 (1870), an effort was made to investigate the violation of state law and city ordinances by certain traction companies. In refusing relief, the Court, by President Judge ALLISON and Judge PAXSON, said: ". . . when adequate legal remedies exist by statute, by ordinance, or by indictment at common law, the Court will not generally move until these remedies, or some of them, have been invoked . . . . This power, which is a most delicate one, is never exercised unless under urgent necessity or when, from the peculiar circumstances of the case, the public interest would suffer from the delays incident to the ordinary forms of law."

A little later, Judge RICE said, in *Commonwealth v. Klein,* 40 Pa. Superior Ct. 352 (1909) : "This ex-

traordinary power is to be exercised sparingly, with great caution, and only when special circumstances or pressing emergencies require it for the suppression of general and public evils, affecting in their influence and operation communities rather than individuals."

The appellate courts refuse investigations, even of public officials, quite as often as they allow them, as a sampling of the modern cases will show. In *McNair's Petition*, 324 Pa. 48 (1936), a writ of prohibition issued against an investigation of the magistrate system in Pittsburgh. It was aptly called a fishing expedition. In *Shenker v. Harr*, 332 Pa. 382 (1938), approval was given to an investigation in Philadelphia where the lower court had charged a special grand jury "to inquire into and investigate . . . the alleged breakdown of law enforcement, particularly in respect to gambling, as well as the neglect, inefficiency and connivance of members of the Bureau of Police." In the three cases involving the *Dauphin County Grand Jury Investigation*, 332 Pa. 289, 342, and 358 (1938), we allowed an investigation into alleged corruption in the State government. In *Philadelphia County Grand Jury Investigation Case*, 347 Pa. 316 (1943), a writ of prohibition issued against an investigation of the Philadelphia Registration Commission. In *Grand Jury Investigation of Western State Penitentiary*, 173 Pa. Superior Ct. 197 (1953), the Superior Court limited the investigation to the criminal acts of those involved in riot and escape from the prison. It said:

"We think it clearly appears from the petition of the District Attorney that his principal reason for seeking an investigation by the grand jury is to 'ascertain the real and actual conditions presently and heretofore existing in the said Western Penitentiary, and the reasons for such riotous activities and prison violations . . . .' The District Attorney's interest goes beyond the investigation of crimes . . . ."

The law on this subject is well summed up in what has become the leading case, *McNair's Petition,* supra (324 Pa. 48) : "A grand jury investigation, because of the gravity of the undertaking, must have a definite purpose to discover criminal acts which seriously affect or injure the public generally, which effect, if permitted to continue, would endanger public safety or health, demoralize the personal security of members of the public, or permit systematic criminal depredations by public officers. Such matters require immediate attention so that these evils may be suppressed. The criminal acts subject to investigation must be such that the ordinary process of the law is inadequate to cope with or discover them.

"A grand jury's investigation cannot be a blanket inquiry to bring to light supposed grievances or wrongs for the purpose of criticizing an officer or a department of government, nor may it be instituted without direct knowledge or knowledge gained from trustworthy information that criminal conspiracy, systematic violations of the law or other criminal acts of a widespread nature prevail, and at least one or more cognate offenses should exist on which to base a general investigation. The investigation cannot be aimed at individuals primarily, as such, nor at the commission of ordinary crimes . . . ."

The petition of the District Attorney now before us avers specific cognate crimes and nothing else but glittering generalities. There is no allegation of any pressing emergency that "shakes the social fabric" or carries "terror and dismay among the citizens" or jeopardizes or demoralizes public security or would suffer from the law's ordinary delays, such as the prevention, actual or threatened, of the supply of food or milk, the destruction of perishables, the disruption of the flow of raw materials and basic commodities to

the City, or a breakdown of transportation, a stranding of the working population, or rioting. Such things, when they exist, are not conclusions but facts and should be pleaded.

Nothing of the sort is in the petition. Nor is there a factual description of any existing or threatened danger to explain why the ordinary agencies of law enforcement are powerless to discover or cope with it. The mere statement that they are powerless is insufficient. To the contrary, we were told at argument that members of Local 107 have availed themselves, since Judge GOLD convened the jury, of Section 501(b) of the Labor-Management Reporting and Disclosure Act of Congress of 1959, which provides procedure whereby members of a union can bring charges of misappropriation of union funds by union officials. With such Federal facilities available and in use, and with thousands of policemen in Philadelphia, we think it ingenuous to aver a breakdown of law enforcement with regard to this union.

We do not condone the acts darkly suggested in the petition, and we do not say that if the situation worsens a special grand jury may not properly be convened to investigate it. But it must remain forever clear that if one union may be investigated, so may one store, one bank, one newspaper, one railroad, one local industry. The situation in such a single enterprise would have to be grave indeed to pose a threat to general public safety or to public health at large. A grand jury is not a busybody or an instrument of reform; it is an arm of the criminal court, one of its emergency weapons to be used sparingly and with great caution.

The District Attorney in argument asked leave to amend in case our opinion should be adverse. Except for technical corrections, we do not see the situation as amendable, despite the fact that in the *Dauphin*

*County* case, supra, (332 Pa. 289), we allowed amendment. This is not an exercise in pleading. If the situation were so urgent and so dreadful as to require the intervention of a grand jury, the petition would write itself. It is not now a matter of merely adding a few improving clauses but of reporting danger so ominous as to be self-evident. If there is no trace of such urgency in the original petition, its presence in an amended one would seem contrived.

In order to prevent such action in future, we add our disapproval of impounding the names and addresses of the members of the grand jury. The effort to protect them is laudable but misdirected, for in times of stress citizens called upon for civic service must expect to stand to and be known. Impounding the identity of the jury might of itself require the calling of a new group, as a majority who were willing to serve anonymously might be fearful or unwilling to do so when disclosed.

The petition is granted and a writ of prohibition is issued, directed to the Honorable JOSEPH E. GOLD and requiring him forthwith to discharge the Special Grand Jury convened by him on September 3, 1959, to investigate Local 107 and to terminate all proceedings in connection with it.

Mr. Justice BELL and Mr. Justice BENJAMIN R. JONES dissent.

Mr. Justice McBRIDE took no part in the consideration or decision of this case.