Sandra Hale **LEVINSON** and
Nathan W. Schwerner

v.

**ATTORNEY GENERAL OF the UNITED STATES** and **United States Attorney for the Eastern District of Pennsylvania.**

Civ. A. No. 70–692.

United States District Court,
E. D. Pennsylvania.

May 18, 1970.

As Amended May 26, 1970.

---

Henry W. Sawyer, III, Philadelphia, Pa., for plaintiffs.

William D. Ruckelshaus, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Louis C. Bechtle, U. S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BODY, District Judge.

On November 20, 1968 an advertisement was placed in the New York Times by an organization entitled the International Committee to Defend Eldridge Cleaver. The ad alleged that certain invalid and unconstitutional proceedings were being taken against Cleaver, and it sought support and financial contributions for his legal defense.

Plaintiffs Levinson and Schwerner respectively are the Chairman and Treasurer of that organization. On November 1, 1969 they were served with subpoenas duces tecum ordering them to appear at 10:00 A.M. on November 6, 1969 before a federal grand jury sitting in Philadelphia to investigate possible mail fraud violations. The subpoenas also directed plaintiffs to produce before the grand jury Committee books, records, documents, correspondence, and the like. A motion was filed to quash those portions of the subpoenas requiring produc-

**986**

tion of any documents tending to reveal the names of contributors, associates or collaborators, other than paid employees of the Committee. The motion further requested the issuance of an order circumscribing the scope of interrogation to the same extent.

We denied the motion to quash and ordered the plaintiffs to appear. On appeal, however, the Government agreed to modify its subpoenas to the extent requested by plaintiffs, thereby rendering the aforementioned issues moot. The plaintiffs nevertheless argued that the appeal was not entirely moot because, at oral argument before this Court, they had requested a stay of all grand jury proceedings pending an ex parte showing of probable cause of mail fraud by the Government. The Court of Appeals found that the latter request had not been properly formalized and had not been passed upon by this Court in its initial order of denial. Accordingly, it held that the issues raised by the oral application were not within the scope of the appeal.

Plaintiffs have subsequently commenced the present action to formally raise these latter issues. They seek a preliminary injunction restraining the grand jury investigation during the pendency of this action. They also pray for a judgment declaring that plaintiffs need not appear nor produce records before the grand jury, or in the alternative, that such need not be done until the Government has made a showing of probable cause to the Court.

The defendants have moved to dismiss, alleging as grounds therefor that (1) plaintiffs have an adequate remedy at law and have not alleged sufficient irreparable injury; (2) the Court lacks jurisdiction; and (3) the complaint fails to state a claim upon which relief can be granted.

We are not persuaded by the procedural objections raised by the defendants. Our research indicates that a variety of remedies are customarily employed to achieve the end plaintiffs now seek. A motion to quash is probably the means most frequently used.[1] Nevertheless, there are instances in which a petition to vacate and restrain,[2] applications to quash, stay and restrain,[3] and a motion for a protective order[4] have also been utilized. For this reason we reject the formal objection that plaintiffs have mistakenly invoked the equitable as opposed to the legal, jurisdiction of the Court. We think the instant suit is more properly viewed as one in which this Court is asked to exercise its supervisory power over a grand jury sitting herein to prevent the process of that grand jury from being used abusively.[5] Moreover, plaintiffs have previously attempted to raise these same issues by means of a motion to quash and were ultimately remitted to this Court by the Court of Appeals with the suggestion that they do so through a formal request for an injunction. We therefore conclude that the form of action chosen is proper.[6] Finding defendants' objections with regard to jurisdiction and the sufficiency of plaintiffs' complaint unpersuasive, we proceed to the merits.

Plaintiffs' prayer that a judgment issue enjoining the defendants from requiring the former to appear or produce any records before the grand

1. See Fed.R.Crim.P. 17(c).

2. In Re Grand Jury Proceedings, 4 F.Supp. 283 (E.D.Pa.1933) (Kirkpatrick, J.).

3. Application of Iaconi, 120 F.Supp. 589 (D.Mass.1954) (Wyzanski, J.).

4. In Re Grand Jury Investigation (General Motors Corp.), 32 F.R.D. 175 (S.D. N.Y.1963), appeals dismissed sub nom. In Re Grand Jury Investigation of Violations, 318 F.2d 533 (2d Cir. 1963), reh. denied 318 F.2d at 536.

5. Cf. In Re Grand Jury Investigation of Violations, supra, at 536.

6. Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), cited by the defendants, is distinguishable by analogy to Cobbledick v. United States, 309 U.S. 323, 329–330, 60 S.Ct. 540, 84 L.Ed. 783 (1940).

jury must be denied. "As an engine of discovery against organized and far-reaching crime, (the grand jury) has no counterpart." In Re Grand Jury Proceedings, supra, 4 F.Supp. at 283. It follows that "the giving of testimony and the attendance upon court or grand jury in order to testify are public duties which *every person* within the jurisdiction of the government is bound to perform upon being properly summoned * * *." Blair v. United States, 250 U.S. 273, 281, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919). (emphasis added). See also Application of Caldwell, 311 F.Supp. 358 (N.D.Cal., opinion filed April 6, 1970).[7]

There remains, then, the question of whether plaintiffs are entitled to have the scope of the grand jury questioning limited, and if so, to what extent. With respect to this issue the plaintiffs argue in two steps. They first assert that they may not be questioned before the grand jury concerning the truth or falsity of any statements or representations made in the newspaper ad. This alleged immunity is premised upon plaintiffs' First Amendment rights of freedom of speech and press.

█ The Court agrees. United States v. Ballard, 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1944) held that the First Amendment precludes an inquiry into the truth or falsity of a defendant's religious beliefs as the basis for a mail fraud prosecution. That holding is equally applicable when expressions of political philosophy such as the present newspaper advertisement[8] are involved. N.A.A.C.P. v. Button, 371 U.S. 415, 444–445, 83 S.Ct. 328, 9 L.Ed. 2d 405 (1963); Cantwell v. Connecticut, 310 U.S. 296, 310, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

The second step of plaintiffs' argument is the assertion that the First Amendment requires a showing of probable cause before plaintiffs may be questioned about the disposition of collected funds. With this we disagree. The Court is aware of but one decision dealing with grand jury proceedings wherein the Government was required to make a preliminary showing of the general type sought here. That is the very recent decision of the United States District Court for the Northern District of California in Application of Caldwell, supra. There the court said:

"When the exercise of the grand jury power of testimonial compulsion so necessary to the effective functioning of the court may impinge upon or repress First Amendment rights of freedom of speech, press and association, which centuries of experience have found to be indispensable to the survival of a free society, such power shall not be exercised in a manner likely to do so until there has been a clear showing of a compelling and overriding national interest that cannot be served by alternative means." 311 F.Supp. at 360.

With all due respect, we feel compelled to withhold extension of the preceding principle to the facts of the present case. First, there are important factual differences between this case and *Caldwell*. The denial of a protective order in the latter case might well have resulted in considerable harm to the applicant's business and livelihood. It would also have set a new and far-reaching precedent in this area. Since the applicant in *Caldwell* was one step removed from those persons who activities the grand jury sought to investigate, it was at least possible that other witnesses could be called to give the same testimony. Such is not necessarily true in the instant case where plaintiffs may well be the very persons whose activities will come under scrutiny. Second, the showing required of the Government in *Caldwell* was different from that sought here. There it was called upon to show

---

7. A notice of appeal was filed on April 17, 1970.

8. Cf. New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, appendix (1964).

"a compelling and overriding national interest that cannot be served by alternate means." Here plaintiffs contend that a showing of "probable cause" is necessary. While we are mindful of the source of the *Caldwell* standard,[9] we are not persuaded that grand jury proceedings can be analogized to other types of investigations. Finally, the pre-*Caldwell* cases neither impose nor imply such a requirement as was there adopted.[10]

 In summary, we hold that the Government is not required to make a showing of either probable cause or some compelling and overriding national interest before plaintiffs may be questioned about the disposition of collected funds. This absence of restriction extends as well to inquiries concerning the motives and purposes underlying the placement of the advertisement, or any part thereof, in the newspaper.

## ORDER

And now, this eighteenth day of May, 1970, it is ordered that:

1) plaintiffs' motion for a preliminary injunction be and the same is hereby denied;

2) plaintiffs' prayer for a judgment declaring that plaintiffs need not appear nor produce the subpoenaed documents before the grand jury be and the same is hereby denied;

3) plaintiffs' prayer for a declaratory judgment restricting the scope of the grand jury interrogation be and the same is hereby granted to the following limited extent: plaintiffs shall not be questioned, nor shall the subpoenaed documents be examined, with respect to the truth or falsity of any statements or representations contained

in the newspaper advertisement involved herein;

4) in all other respects plaintiffs' prayer for relief is denied.

5) defendants' motion to dismiss be and the same is hereby denied.

---

9. E. g., Gibson v. Florida Legislative Investigation Committee, 372 U.S. 539, 83 S. Ct. 889, 9 L.Ed.2d 929 (1963).

10. Mr. Justice Jackson in his dissenting opinion in *Ballard* went so far as to say: "I do not doubt that religious leaders

may be convicted of fraud for making false representations on matters other than faith or experience, as for example if one represents that funds are being used to construct a church when in fact they are being used for personal purposes." 322 U.S. at 95, 64 S.Ct. at 890.