**[J-101-2018] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

IN RE: RETURN OF SEIZED PROPERTY
OF LACKAWANNA COUNTY

PETITION OF: COMMONWEALTH OF
PENNSYLVANIA

: No. 93 MM 2018
:
: Appeal from the Order of the
: Lackawanna County Court of
: Common Pleas at No. 17 CV 5927
: dated May 11, 2018
:
: ARGUED: December 5, 2018
:

**DISSENTING OPINION**

**JUSTICE DONOHUE**                                             **DECIDED: July 17, 2019**

I respectfully dissent from the learned Majority's Opinion. In my view, it improperly

grants an investigating grand jury with the authority to utilize search warrants in its

investigations, not because the Investigating Grand Jury Act, 42 Pa.C.S. §§ 4541-4553

(the "Act"), confers any such power, but rather because the supervising judge, like any

common pleas court judge, has the power to issue search warrants. In so doing, the

Majority holds that the investigative powers of a grand jury are commensurate with the

powers of the supervising judge and of law enforcement generally. The Majority ignores

that the opposite is true, and that the sole source of the investigative powers of the grand

jury is the Act. The Majority never engages in any statutory construction to determine

what authority the General Assembly actually bestowed upon an investigating grand jury.

As our recent jurisprudence firmly establishes, an investigating grand jury has no authority

other than that conferred by the Act. *In Re: Fortieth Statewide Investigating Grand Jury*,

197 A.3d 712, 721 (Pa. 2018) (in Pennsylvania, "the investigating grand jury process is

solely a creature of statute").[1]  As we have recognized, there is "no authority to suggest that the [adoption of the Act] provided a license to go beyond that which the legislature explicitly and carefully delineated."  *In re County Investigating Grand Jury of April 24, 1981*, 459 A.2d 304, 306 (Pa. 1983).

---

[1]  Though once creatures of common law, investigating grand juries' powers and procedures are now circumscribed by the Act.  *In re County Investigating Grand Jury of April 24, 1981*, 459 A.2d 304, 306 (Pa. 1983) (citing *Robert Hawthorne, Inc. v. County Investigating Grand Jury*, 412 A.2d 556, 559 (Pa. 1980) (holding that grand jury investigation's legality was to be measured by the provisions and requirements of the Act, not the common law)).  In *In Re: Fortieth Statewide Investigating Grand Jury*, we specifically held as follows:

> [T]he investigating grand jury process is solely a creature of statute, the Investigating Grand Jury Act, and, as such, the General Assembly has specified in detail therein a grand jury's duties and the procedures to be utilized in carrying out its designated tasks.  The Act is therefore the product of a deliberative legislative process whereby various policy questions regarding the empaneling of an investigative grand jury, the duration of its existence, **the manner in which it may receive and consider evidence,** the circumstances under which it may issue a report, and the conditions under which that report may be disseminated to the public were carefully considered and evaluated by that lawmaking body.  Accordingly, the various provisions of the Act governing the term and existence and operation of the grand jury – including the grand jury's receipt and consideration of evidence, its preparation of a report, and the role of the supervising judge – reflect the legislature's ultimate policy decisions on those matters.  *See* 42 Pa.C.S. §§ 4545, 4546, 4548, and 4552.  In responding to the present constitutional challenge, our Court may not usurp the province of the legislature by rewriting the Act to add hearing and evidentiary requirements that grand juries, supervising judges, and parties must follow which do not comport with the Act itself, as that is not our proper role under our constitutionally established tripartite form of governance.

*In Re: Fortieth Statewide Investigating Grand Jury*, 197 A.3d at 721 (emphasis added).

The question before us is an issue of first impression for this Court, namely whether the Act authorizes a grand jury to use search warrants as an investigative tool. Majority Op. at 8, 21-22. If it does, the supervising judge can issue the warrant. However, if the Act specifically defines the investigative tools of the Grand Jury and does not include the utilization of search warrants, then any authority the supervising judge may have as a common pleas court judge is totally irrelevant to the propriety of the issuance of a warrant. This is a straightforward question of statutory interpretation that requires us to construe the Act pursuant to our standard tools of construction. Because the Act specifically defines the investigative resources of the grand jury, and because search warrants are neither explicitly nor by implication included in those resources, I dissent from the Majority's contrary conclusion.

We must look to the Act to determine whether search warrants are an investigative resource available to the grand jury when it conducts an investigation. Pursuant to our canons of statutory interpretation, our goal is to "ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. *Id.* § 1921(a). In ascertaining the intention of the General Assembly, we must presume that the General Assembly intends the entire statute, including all of its provisions, to be effective. *Id.* § 1922(2). The best indication of the General Assembly's intent is the plain language of the statute. *Malt Beverages Distrib. Ass'n. v. Pa. Liquor Control Bd.*, 974 A.2d 1144, 1149 (Pa. 2009).

As a result, we must interpret the relevant language of the Act to discern the investigative powers of an investigating grand jury. Section 4548 of the Act provides, in relevant part, as follows:

> (a) General rule. – The investigating grand jury shall have the power to inquire into offenses against the criminal laws of the Commonwealth alleged to have been committed within the county or counties in which it is summoned. **Such power shall include the investigative resources of the grand jury which shall include but not be limited to the power of subpoena, the power to obtain the initiation of civil and criminal contempt proceedings, and every investigative power of any grand jury of the Commonwealth.** Such alleged offenses may be brought to the attention of such grand jury by the court or by the attorney for the Commonwealth, but in no case shall the investigating grand jury inquire into alleged offenses on its own motion.
>
>             *      *      *
>
> (c) Other powers. – Except for the power to indict, the investigating grand jury shall have every power available to any other grand jury in the Commonwealth. The jurisdiction, powers and activities of an investigating grand jury shall not, if otherwise lawful, be limited in any way by the charge of the court.

42 Pa.C.S. § 4548(a), (c) (emphasis added).

Section 4548 thus provides that an investigating grand jury has the "power to inquire" into violations of the criminal laws of the Commonwealth, and that this power to inquire may be effectuated by the mechanisms included in the "investigative resources of the grand jury." Section 4548 then lists certain investigatory mechanisms that are included within the ambit of "investigative resources of the grand jury," specifically the power of subpoena, the power to obtain the initiation of civil and criminal contempt proceedings, and every investigative power of any grand jury of the Commonwealth. This list, however, is modified by the phrase "shall include but not be limited to." In this regard,

it is first important to note that this phrase does not modify the "investigative resources of the grand jury," but rather modifies the specifically enumerated powers that follow that phrase. As such, the inclusion of the phrase "shall include but not be limited to" cannot be read to provide that grand juries have at their disposal the "investigative resources" set forth in the Act along with other non-specified powers not included in that section. Instead, by modifying the specifically listed investigative resources, the phrase connotes that the General Assembly merely intended that the powers specifically listed in section 4548 may not be exhaustive of all of the investigative resources of the grand jury. *See, e.g., Dep't of Envtl. Prot. v. Cumberland Coal Res., LP*, 102 A.3d 962, 976 (Pa. 2014) ("[I]t is widely accepted that general expressions such as "including," or "including but not limited to," that precede a specific list of included items are to be considered as words of enlargement and not limitation.").

If section 4548 was the only pronouncement as to what mechanisms are included within the "investigative resources of the grand jury," the phrase "shall include but not be limited to" might provide the Majority with some basis to argue that that search warrants are implicitly included in the non-exhaustive list set forth in section 4548. In civil cases, the phrase "shall include but not be limited to" would typically invoke the venerable statutory construction doctrine of ejusdem generis, pursuant to which other items may be included in the list if they are construed to be of the "same kind or class" as the specifically identified items. *Id.* (citing, e.g., *Steele v. Statesman Ins. Co.*, 607 A.2d 742, 743 (Pa. 1992)). No such analysis need be, nor may be, conducted here, however, because the General Assembly eliminated any question regarding the specific investigatory

mechanisms included in "investigative resources of the grand jury" by explicitly defining the term in the definitional section of the Act:

> **Investigative resources of the grand jury.** The power to compel the attendance of investigating witnesses; the power to compel the testimony of investigating witnesses under oath; the power to take investigating testimony from witnesses who have been granted immunity; the power to require the production of documents, records and other evidence; the power to obtain the initiation of civil and criminal contempt proceedings; and every investigative power of any grand jury of the Commonwealth.

42 Pa.C.S. § 4542.

Based upon this definition, the exclusive list of statutorily designated "investigative resources of the grand jury" is as follows:

- the power to compel the attendance of investigating witnesses

- the power to compel the testimony of investigating witnesses under oath

- the power to take investigating testimony from witnesses who have been granted immunity

- the power to obtain the initiation of civil and criminal contempt proceedings

- the power to require the production of documents, records and other evidence

- every investigative power of any grand jury of the Commonwealth

The obvious, and for present purposes striking, observation from reviewing this list of investigative resources is **the absence of any reference to search warrants**. This result compels the application of a fundamental principle of statutory construction, namely the doctrine of expressio unius est exclusio alterius, meaning that the expression of one thing is to the exclusion of others. *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1223 (Pa. 2002). According to this doctrine, "the court may not supply omissions in the statute when it appears that the matter may have been intentionally omitted."

*Commonwealth v. Spotz*, 716 A.2d 580, 590 (Pa. 1998). In short, if the General Assembly had intended for the issuance of search warrants to be an investigatory resource of investigating grand juries, it could easily have listed this resource in section 4542's definition of "investigative resources of the grand jury." Alternatively, it could have imbued investigating grand juries with "every investigative power of law enforcement in this Commonwealth." The General Assembly clearly did not do either of these things and thus we may not infer that it intended for search warrants to be an investigative resource available to the grand jury. *See, e.g.*, *Snyder Brothers, Inc. v. Pa. Util. Comm'n*, 198 A.3d 1056, 1071 (Pa. 2018) ("It is axiomatic that, 'if the General Assembly defines words that are used in a statute, those definitions are binding.'"); *see also Pa. Allstate Ins. Co. v. Heffner*, 421 A.2d 629, 630 n.4 (Pa. 1980) ("The definitions given by the legislature to the terms of a statute are controlling.").

In addition to the lack of any express reference to search warrants, their use is clearly not authorized by any of the investigative resources actually identified in section 4542. The first four items on the list plainly refer to the various subpoena powers of investigating grand juries. Rule 234.1(a) of the Pennsylvania Rules of Civil Procedure provides that a "subpoena is an order of court commanding a person to testify at a particular time and place. It may also require the person to produce documents or things which are under the possession, custody or control of that person." Pa.R.C.P. 234(a). The power to compel the attendance and testimony of investigating witnesses under oath, which, taken together with the power to obtain civil and criminal contempt procedures, amounts to the power to issue subpoenas and enforce compliance through contempt proceedings. The "power to take investigating testimony from witnesses who have been

granted immunity" refers again to the power to issue and enforce subpoenas ad testificandum, and extends this power to include the power to request an order of immunity in order to facilitate a witness's testimony.[2] Section 4542 defines investigative tools of the grand jury to include the issuance of subpoenas duces tecum and ad testificandum.

The fifth item on the list, "the power to require the production of documents, records and other evidence," likewise does not authorize the grand jury to utilize search warrants to obtain information or evidence to assist in an investigation. The "power to require production" anticipates an action on the part of the **possessor** of the documents, records and evidence, i.e., to produce them to the grand jury.[3] A search warrant, conversely, requires no action by the possessor of the information or things. The execution of a search warrant is a seizure **from** the possessor, not a production **by** the possessor. A production of documents and other evidence by the possessor is accomplished by way of subpoena.

Finally, the investigating grand jury's power to utilize "every investigative power of any grand jury of the Commonwealth" does not authorize the use of search warrants. The only other grand jury of the Commonwealth is the indicting grand jury, which, unlike an

---

[2] *See also* 42 Pa.C.S. § 5947 (further providing that the Attorney General or a district attorney may apply for an immunity order with regard to grand jury proceedings); *In re Martorano*, 346 A.2d 22, 23-24 (Pa. 1975) (describing process for obtaining immunity order and compelling testimony via contempt procedures).

[3] Consistent with this understanding, Black's Law Dictionary (11th ed. 2019) defines subpoena duces tecum as a "subpoena ordering the witness to appear in court and to bring specified documents, records or things."

investigating grand jury, is not a creature of statute.[4]  As of 2012, the indicting grand jury's

limited powers and procedures are delineated in the Pennsylvania Rules of Criminal

Procedure.  *See* Pa.R.Crim.P. 556 – 556.13.  These rules imbue the indicting grand jury

with many of the same powers of the investigating grand jury.  For example, as with the

investigating grand jury, the indicting grand jury's most significant power, and that which

is explicitly provided by the rules of criminal procedure, is the power of **subpoena**.

Pa.R.Crim.P. 556.11(A)(1) (authorizing grand jury to "inquire into violations of the criminal

---

[4]  The indicting grand jury has a long history in Pennsylvania.  In Pennsylvania, proceedings may be initiated by either criminal information ("a formal accusation filed by a prosecuting officer without the intervention of the grand jury") or a grand jury indictment. Ken Gormley, *The Pennsylvania Constitution: A Treatise on Rights and Liberties*, § 13.2[a], 422-423 (2004).  The Pennsylvania Constitution of 1790 implicitly provided for the indicting grand jury by limiting the prosecution from proceeding against persons by information.  It stated "[t]hat no person shall, for any indictable offence, be proceeded against criminally by information" except in certain specific cases such as "by leave of the court, for oppression and misdemeanor in office."  Pa. Const. of 1790 art. IX, § 10 (now in art. I, § 10); *see also* Gormley, at § 13.2[b], 424 (citing *Appeal of Hartranft*, 85 Pa. 433, 453 (1877) (Agnew, J. dissenting) (referring to the grand jury as "one of the boasted bulwarks of English liberty handed down to us, and protected by the Declaration of Rights. No man can be tried for a crime except upon a bill of indictment found by a grand jury."))

In 1973, the Pennsylvania Constitution was amended to also allow courts of common pleas of each county, with the approval of the Supreme Court, to provide for the initiation of criminal proceedings by information.  Pa. Const. art. I, § 10 (1973).  As a result, the indicting grand jury fell out of practice.  I have uncovered no authority providing that indicting grand juries had the power to obtain search warrants at common law.

In 2012, this Court, by way of the Pennsylvania Rules of Criminal Procedure, revived the indicting grand jury in response to the need to control witness intimidation occurring as a result of preliminary hearings.  *See* Pa.R.Crim.P. 556-556.13; Pa.R.Crim.P. 556, cmt. (stating that "[t]his rule was adopted in 2012 to permit the use of an indicting grand jury as an alternative to the preliminary hearing" and explaining that this Court, simultaneous to the promulgation of the new rules of criminal procedure governing the indicting grand jury, issued an order "requir[ing] that each of the judicial districts must petition the Court for permission to resume using the indicting grand jury, **but only** as provided in these rules") (emphasis in original).  Under the current iteration of the indicting grand jury, its rules and procedures are governed by our rules of criminal procedure.

law through subpoenaing witnesses and documents"). As with the Act, our Rules of Criminal Procedure neither expressly nor implicitly provide that an indicting grand jury is empowered to utilize search warrants to obtain information, evidence or testimony to aid in its investigation.

As illustrated by the foregoing statutory analysis, the Act provides an investigating grand jury with various powers relative to subpoenas, but it does not provide the grand jury with the power to request, issue or execute search warrants. The Majority, without citation to the Act or resort to any rules of statutory construction, holds to the contrary. It reasons as follows:

> Relatedly, we agree with the OAG that the Investigating Grand Jury Act is intended to expand, rather than narrow, the arsenal of investigative tools at the Commonwealth's disposal when conducting an investigation. The Act implicitly recognizes this principle by requiring the attorney for the Commonwealth to allege, prior to submitting an investigation to the grand jury, "that one or more of the investigative resources of the grand jury are required in order to adequately investigate the matter." 42 Pa.C.S. §4550(a). We have commented this imposition of a jurisdictional predicate that "the normal law enforcement resources of [the Commonwealth] must be inadequate" before an investigation may be submitted to a grand jury is "[c]entral to the Act's purpose[.]" *In re County Investigating Grand Jury of April 14, 1981 (Appeal of Krakower)*, 459 A.2d 304, 307 (Pa. 1983). It seems obvious that central purpose is to supply the Commonwealth with additional investigative tools — i.e., the powers and investigative resources of the grand jury — so that it may ferret out criminal activity not otherwise able to be detected or effectively pursued through traditional law enforcement techniques alone. *See, e.g., id.* ("the investigating grand jury has been given resources to enable it to investigate and gather evidence otherwise unobtainable")[.]

Majority Op. at 21-22.

With all respect due, nothing in the language of the Act provides that the General Assembly's intent was to "expand, rather than narrow," the investigative tools at the Commonwealth's disposal in the manner envisioned by the Majority. The pronouncement in section 4550(a) of the Act that a matter needs to be submitted to a grand jury because "one or more of the investigative resources of the grand jury are required in order to adequately investigate the matter," is not in any respect an implicit call to expand the investigative resources of the grand jury beyond those resources expressly provided in the Act. To the contrary, as this Court observed in the *Appeal of Krakower* decision cited by the Majority, section 4550(a)'s declaration signals that a grand jury is necessary because normal law enforcement resources are inadequate. Under the Act, an investigative grand jury possesses an important, and immensely powerful, investigative recourse not available to normal law enforcement – namely, the power to demand and procure information, evidence and testimony through its subpoena power. Unlike search warrants, subpoenas may be issued and enforced without any showing of **probable cause**. *Cf.* U.S. Const. amend. IV. (providing that search warrant shall issue only "upon probable cause[.]"); *Commonwealth v. Johnson*, 160 A.3d 127, 140 (Pa. 2017) (explaining that a search warrant is premised upon the existence of "a fair probability that evidence of a crime will be found in a particular place"). Through its subpoena power, an investigating grand jury may uncover evidence of criminal conduct that might otherwise elude law enforcement. The investigating grand jury can proceed on mere suspicion; law enforcement may not.

Given the powerful nature of this investigative tool available to the investigating grand jury, important pre-deprivation protections governing the issuance and

enforcement of subpoenas were intended by the General Assembly to avoid encroachment on individual rights. As the United States Supreme Court observed, a subpoena "remains at all times under the control and supervision of a court[,]" and "[g]rand juries are subject to judicial control and subpoenas to motions to quash." *United States v. Dionisio*, 410 U.S. 1, 10, 12 (1973). Significantly, a witness resisting compliance with a subpoena can raise objections to production, all of which are asserted **prior** to providing the documents, evidence or testimony sought by the grand jury.[5] See *Robert Hawthorne, Inc. v. Cnty Investigating Grand Jury*, 412 A.2d 556, 561, n.12 (Pa. 1980). This pre-deprivation review process also protects the investigation by allowing the Commonwealth to refashion subpoenas when credible challenges are lodged. *See, e.g.*, Wayne R. LaFave, et al., *Criminal Procedure,* § 8.3(c).

The Majority does not explain, nor does it follow, that granting an investigating grand jury the power to utilize search warrants when conducting an investigation in any respect expands the investigative tools at the Commonwealth's disposal. Normal law enforcement already has at its disposal the power to obtain evidence through the use of search warrants (where probable cause exists). Section 4550(a)'s reference to a need

---

[5] Dissimilarly, the search warrant process does not allow adversarial pre-deprivation process or challenges. To the contrary, a challenge to the legality of a search warrant is brought after the search and seizure has occurred and results in the drastic remedy of suppression of illegally obtained evidence as well as the "fruits of the poisonous tree." *Commonwealth v. Fulton*, 179 A.3d 475, 489-92 (Pa. 2018). Seized documents can be immediately made available to the grand jury. Although a motion for the return of property is an available remedy to any persons impacted by the seizure, there is no protection from disclosure to the grand jury prior to its admission. Given the vulnerability of the grand jury process to abuses of power and the nature of the pre-deprivation process afforded to individuals subjected to subpoenas versus search warrants, it is eminently reasonable that the General Assembly deemed subpoenas, but not search warrants, as suitable grand jury investigatory resources.

to use "one or more of the investigative resources of the grand jury" to investigate a matter may only be understood as a call for utilization of an investigative power unique to the grand jury under the Act – the power of subpoena to obtain information, evidence or testimony without a prior showing of probable cause.

The Majority further contends that "searches and subpoenas offer different advantages" and that "[t]he unique advantages offered by each investigative tool underscore why the Commonwealth may properly employ either or both in relation to a grand jury investigation." Majority Op. at 22 n.14. It is not the unique advantages of an investigative tool that renders it available to the grand jury. Instead, the source of the investigative powers available to the grand jury is the Act itself.

Less than one year ago, in *In re Fortieth Statewide Investigating Grand Jury*, this Court forcefully recognized that the Act "reflects the legislature's ultimate policy decisions" with regard to grand jury practice (including "the manner in which it may receive and consider evidence"), and that as a result this Court "may not usurp the province of the legislature by rewriting" its provisions. *In re Fortieth Statewide Investigating Grand Jury*, 197 A.3d at 721. The ultimate policy decision made by the General Assembly was to allow the grand jury to investigate without probable cause of criminal activity through its power of subpoena, but to require opportunities for pre-production objections to specific demands for information. This balance was struck by the General Assembly and it is not for this Court to rewrite the Act.[6] Today, however, the Majority does in fact rewrite the

---

[6] The investigating grand jury context also demands greater secrecy than exists with regard to the execution of a search warrant. Secrecy is "indispensable to the effective functioning of a grand jury." *In re Dauphin Cnty Fourth Investigating Grand Jury*, 19 A.3d 491, 502-03 (Pa. 2011) (citing *In re Investigating Grand Jury of Phila. Cnty. (Appeal of*

explicit definition of "investigative resources of the grand jury" in the Act to provide investigating grand juries with the power to utilize search warrants. In so doing, the Majority conflates the investigative tools available to **law enforcement** generally in conducting an investigation with the unique investigative tools of a **grand jury** provided under the Act to aid in its investigatory proceedings. The Majority imbues the grand jury with the judge's authority rather than acknowledge that the grand jury's existence and authority derives from the Act, and reads into the Act an additional grand jury investigative power not conferred by the General Assembly. As explained herein, the Act simply does not authorize the use of search warrants as an investigative tool that may be utilized by a grand jury.

For these reasons, I respectfully dissent. I would affirm the decision of the Court of Common Pleas of Lackawanna County.

---

*Phila. Rust Proof Co.)*, 437 A.2d 1128, 1130 (Pa. 1981)). Issuance and service of a grand jury subpoena (unlike execution of a search warrant) may be accomplished discretely, without drawing public attention. *See* Pa.R.Crim.P. 114(B)(3)(a) and Pa.R.C.P. 234.2 (b)(1)-(3) (acknowledging methods of service for subpoenas, including by mail). By contrast, execution of a search warrant often involves a public show of force. *See* LaFave, Criminal Procedure, at § 8.3(c), n.23 & accompanying text (comparing subpoenas and search warrants as investigative tools, stating that subpoenas readily achieve goal of "keep[ing] from the target and the public the grounding for the selection of particular records and evidence" and in contrast to hearing on search warrant, "any hearing challenging the subpoena can be readily closed"); *see also* Pa.R.Crim.P. 207 (describing manner of entry into premises for purposes of executing search warrant). In this case, the execution of the search warrants garnered widespread public attention. Stacy Lange, Search Warrants Served for Lackawanna County Offices, WNEP.com, Sept. 21, 2017, https://wnep.com/2017/09/21/search-warrants-served-fo-lackawanna-county-offices/ ("It was a sight that shocked many passersby: troopers and agents out in force at the Lackawanna County Prison in Scranton pulling boxes and files from the place.").

In light of the publicity garnered by execution of search warrants and the secrecy required by the grand jury process, the Act instead envisions the use of subpoenas as the principal "investigative resource of the grand jury." 42 Pa.C.S. §§ 4542, 4548(a).

Justice Todd joins this dissenting opinion.