459 A.2d 304

**In re COUNTY INVESTIGATING GRAND JURY OF APRIL 24, 1981.**

**Appeal of Kenneth KRAKOWER and Andrea Krakower.**

Supreme Court of Pennsylvania.

Argued March 9, 1983.

Decided April 22, 1983.

Richard A. Sprague, Nancy D. Wasser, Sprague & Rubenstone, Philadelphia, for petitioners.

Mark S. Gurevitz, Asst. Dist. Atty., Bernard L. Siegel, Eric B. Henson, Philadelphia, for respondent.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

OPINION by the Court

NIX, Justice.

Appellants, Kenneth and Andrea Krakower, have brought this matter for review pursuant to Pa.R.A.P. 702(b) and 3331(a)(3)[1] and request that this Court reverse the January

1. Rule 702. Final Orders

     \*   \*   \*   \*   \*   \*

(b) Supervision of special prosecutions or investigations. All petitions for review under Rule 3331 (review of special prosecutions or investigations) shall be filed in the Supreme Court.

20, 1983 order of Judge Curtis C. Carson, Jr., Supervising Judge of the Philadelphia Investigating Grand Jury of April 24, 1981 (Grand Jury IV). This matter relates to a fire which occurred at 1824 Chestnut Street in Philadelphia on February 11, 1980.

The Commonwealth initially submitted this case to the Philadelphia Investigating Grand Jury of July 1, 1980 (Grand Jury III). A presentment of that grand jury and resulting criminal complaints lodged against appellants were ultimately quashed on April 30, 1982 as a result of a finding that misleading evidence had been submitted to that jury by the prosecution. The Commonwealth sought review in this Court and by *per curiam* order of June 24, 1982, we affirmed the action of the court below.

On June 29, 1982 the District Attorney filed a notice of submission of investigation to Grand Jury IV. Appellants filed a petition to quash the notice of submission. On January 20, 1983 after hearing legal arguments but without allowing the taking of testimony, the court below dismissed the motion to quash.[2] It is that dismissal of the motion to quash that we are now called upon to review.[3]

Rule 3331. Review of Special Prosecution or Investigations
   (a) General rule. Any of the following orders shall be subject to review pursuant to Chapter 15 (judicial review of governmental determinations):

   *  *  *  *  *  *

   (3) An order entered in connection with the supervision, administration or operation of an investigating grand jury or otherwise directly affecting an investigating grand jury or any investigation conducted by it.

2. Appellants argue that it was error for that court to refuse their specific request for an evidentiary hearing. In view of our disposition of this matter we do not reach that issue. In addition, appellants raise four other claims which we need not address: That the District Attorney's averments of the need to employ the investigative resources of the grand jury were patently false and made in bad faith; that the investigation was beyond the scope of the application to empanel the grand jury; that the District Attorney may not enlarge the scope of the grand jury's jurisdiction by filing a notice of submission containing new matter; and that even if the District Attorney had such authority, the notice of submission did not conform to all the statutory requirements for an application to empanel.

3. Appellants requested and received a stay from this writer, pending review, of any further grand jury proceedings in this case.

Information presented to Grand Jury III, according to the quashed presentment, indicates that 1824 Chestnut Street, Philadelphia, is owned by Michael DiPaolo. The building, on February 11, 1980, was totally occupied by business and residential tenants. Appellants rented the first floor front store to conduct a women's clothing shop called Capezio. On February 11, 1980 a fire in the shop was reported to the Philadelphia fire department at 6:18 p.m. Responding at 6:20 p.m., the fire department found a fire in the stairwell leading from the main storefront sales area to an office in the rear of the store. Two witnesses testified the fire was of incendiary origin.

The Commonwealth asserted that appellants set the fire in order to collect fire insurance. That position was buttressed in part by evidence that judgments had been entered by creditors of the Krakowers and their corporation. Upon appellants' application to quash before Judge Edwin S. Malmed, the supervising judge of Grand Jury III, it was established that of the $131,342.09 recorded debts lodged against appellants or their business, $120,372.11 of the judgments had been marked "satisfied" of record prior to the date of the fire, in some cases many years before the fire. This information, which was in the possession of the District Attorney, was not presented to Grand Jury III. Judge Malmed concluded that the failure to offer this clarification possibly left the jury with a misinterpretation which may have tainted their decision. It is to be emphasized that the quantum of the evidence presented before the grand jury to establish a *prima facie* case was not and is not being challenged.

The June 29, 1982 notice of submission to the supervising judge of Grand Jury IV alleged that the "investigative resources of the grand jury [were] necessary for proper investigation" and that the "resources of the grand jury [were] ... required to cure the error found by Judge Malmed." However, the District Attorney conceded at oral

argument before the full Court that the investigation was completed and that he did not intend to produce new evidence before Grand Jury IV. The single purpose for requesting the new submission was to "cure the error" by advising the new grand jury of the true financial position of the appellants at the time of the fire.

■ The narrow issue dispositive of the instant appeal is whether the use of Grand Jury IV, in an attempt to cure the taint of misleading information submitted by the District Attorney to Grand Jury III, is within the purposes legislatively prescribed for an investigating grand jury.

Even though the powers of a grand jury are statutorily defined, it is generally said in most jurisdictions that the powers of the grand jury are broad. 38 Am.Jur.2d *Grand Jury,* § 38 (1968). Traditionally in Pennsylvania, we have been more restrictive in the interpretation of the powers vested in investigating grand juries than has been the practice in many other jurisdictions. *Hale v. Henkel,* 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1905), disapproved on other grounds in *Murphy v. Waterfront Com. of New York Harbor,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); *see, e.g., Robert Hawthorne, Inc. v. County Investigating Grand Jury,* 488 Pa. 373, 412 A.2d 556 (1980) and cases cited therein. In the Investigating Grand Jury Act (Act), 42 Pa.C.S.A. §§ 4541 *et seq.,* the General Assembly has set forth the requirements and procedures to be employed in the empaneling and operation of investigating grand juries in this Commonwealth. Although the new statute has been interpreted as granting more extensive powers than previously recognized under former law, *see Robert Hawthorne, Inc. v. County Investigating Grand Jury, supra,* we know of no authority to suggest that the change provided a license to go beyond that which the legislature explicitly and carefully delineated.

In providing for when it is appropriate for an attorney for the Commonwealth to submit a matter to the investigating

grand jury, the General Assembly has provided in Section 4550(a) of the Act that a notice of submission must allege (1) "that the matter in question should be brought to the attention of the investigating grand jury because the investigative resources of the grand jury are necessary for proper investigation" and (2) "that one or more of the investigative resources of the grand jury are required in order to adequately investigate the matter." From this language it is obvious that a critical jurisdictional fact is the need to utilize the investigative resources of the grand jury.

■ The Act defines "Investigative resources of the grand jury" as follows:

> The power to compel the attendance of investigating witnesses; the power to compel the testimony of investigating witnesses under oath; the power to take investigating testimony from witnesses who have been granted immunity; the power to require the production of documents, records and other evidence; the power to obtain the initiation of civil and criminal contempt proceedings; and every investigative power of any grand jury of the Commonwealth.

42 Pa.C.S.A. § 4542.

The Commonwealth latches upon the clause of Section 4542, "and every investigative power of any grand jury" in an attempt to expand this definitional section to include the power of the jury to issue presentments as an investigative resource justifying submission. This argument suggests that the grand jury's right to issue a presentment should be considered as an investigatory facet of the investigating grand jury's powers. To state the argument establishes its absurdity. Clearly, the issuance of the presentment is nothing more than the result obtained once the investigative resources have concluded in establishing the existence of a *prima facie* case. Moreover, it is to be recognized that the presentment itself is of little significance since the prosecu-

tor could initiate the action, once probable cause has been established, by causing the issuance of complaint and information. In fact the argument of the Commonwealth merely highlights the abuse of the intended use of the grand jury process in this case.

Traditionally, "[b]ecause of the method by which its deliberations are conducted and the secrecy surrounding them, [the grand jury] is a particularly suitable body to investigate misconduct of public officials and public evils." *McNair's Petition,* 324 Pa. 48, 57, 187 A. 498, 503 (1936). Recognition of this important policy has been carried forth in the present Act as reflected in numerous references to "organized crime" and "public corruption" in various sections. As a corollary, the investigating grand jury has been given resources to enable it to investigate and gather evidence otherwise unobtainable in the absence of cooperation from witnesses and other sources of information. Central to the Act's purpose is the *necessity* of the grand jury's resources in order to adequately *investigate* and *uncover* criminal activity. Conversely, the normal law enforcement resources of the District Attorney's office must be inadequate as a jurisdictional predicate to a submission before an investigating grand jury. In the instant case, as previously noted, the investigation is complete; no further evidence needs to be gathered. Here the Commonwealth's intended use of the grand jury clearly does not fall within the area its use was intended to serve.

To permit a submission under these circumstances would require that we ignore the jurisdictional requirement of the Act. It would constitute an abuse of the investigating grand jury, and would waste valuable judicial resources. Moreover, quashing the notice of submission does not preclude the District Attorney from initiating prosecution in accordance with the normal procedures of complaint and information.

The January 20, 1983 Order of the Supervising Judge of the Philadelphia Investigating Grand Jury of April 24, 1981

564

(Grand Jury IV) is reversed and the notice of submission is quashed.[4]

ROBERTS, C.J., concurs in the result.

4. Subsequent to oral argument before the full Court, a Petition for Permission To File Post-Submission Communication and Supplemental Brief was filed by the Commonwealth. The arguments intended to be set forth in the supplemental brief relate to issues not reached in view of our disposition and are thus mooted. Therefore, an order denying the request is filed simultaneously with this opinion.