**[J-101-2018]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| IN RE: RETURN OF SEIZED PROPERTY OF LACKAWANNA COUNTY | : | No. 93 MM 2018 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Lackawanna County Court of |
| PETITION OF: COMMONWEALTH OF PENNSYLVANIA | : | Common Pleas at No. 17 CV 5927 |
| | : | dated May 11, 2018 |
| | : | |
| | : | ARGUED:  December 5, 2018 |
| | : | |

**OPINION**

**JUSTICE DOUGHERTY**                                    **DECIDED:  July 17, 2019**

This appeal concerns a motion for return of property filed by several Lackawanna County governmental entities ("County") relative to materials seized by the Office of Attorney General ("OAG").  The OAG seized the County's property pursuant to search warrants issued by the Supervising Judge of the 41st Statewide Investigating Grand Jury. We consider whether the County's motion for return was properly filed in the Lackawanna County Court of Common Pleas, and whether it must be adjudicated by the Supervising Judge.  We also consider whether the Supervising Judge was empowered to issue the underlying search warrants.

**I. Background**

As the issues in this case relate to the 41st Statewide Investigating Grand Jury, we begin by providing some brief context regarding its formation.  On November 30, 2016, then-Pennsylvania Attorney General Bruce Beemer petitioned this Court, pursuant to the Investigating Grand Jury Act, 42 Pa.C.S. §§4541-4553, for an order directing the

convening of a multicounty investigating grand jury having statewide jurisdiction to investigate organized crime or public corruption or both. *See In re Application of Beemer*, 174 MM 2016 (Nov. 30, 2016). This Court, through an order signed by Chief Justice Saylor,[1] granted the Attorney General's application on December 9, 2016, as required by the Act. *See* 42 Pa.C.S. §4544(a) (where Attorney General's application for multicounty grand jury satisfies relevant statutory criteria, the Court shall issue order granting application within ten days).

Consistent with the dictates of 42 Pa.C.S §4544(b), the Court's order included an array of content typical of such orders. For example, it designated the location of the 41st Statewide Investigating Grand Jury in Montgomery County, and specified the manner in which the jurors were to be selected. The order also appointed a Supervising Judge, the Honorable Anthony A. Sarcione, Judge of the Court of Common Pleas for the 15th Judicial District, Chester County, and instructed that "[a]ll applications and motions relating to the work of the [41st] Statewide Investigating Grand Jury — including motions for disclosure of grand jury transcripts and evidence — shall be presented to the Supervising Judge." Order, 12/9/2016, at 1.[2] Further, pursuant to Section 4544(b)(2), the order provided that "[w]ith respect to investigations, presentments, reports, and all other proper activities of the [41st] Statewide Investigating Grand Jury, Judge Sarcione, as Supervising Judge, shall have jurisdiction over all counties throughout the Commonwealth of Pennsylvania." *Id.* at 1-2. And finally, the order directed Judge Sarcione to maintain control of transcripts,

---

[1] *See* 42 Pa.C.S. §4542 (in the context of the Investigating Grand Jury Act, defining the "Supreme Court" as the Chief Justice or another designated Justice).

[2] Effective December 3, 2018, the Honorable Lillian H. Ransom, Judge of the Court of Common Pleas for the 1st Judicial District, Philadelphia County, assumed the role of Supervising Judge of the 41st Statewide Investigating Grand Jury. Although we specifically refer to Judge Sarcione throughout this Opinion, these references are properly understood as generally describing the Supervising Judge of the 41st Statewide Investigating Grand Jury.

evidence, and matters occurring before the grand jury as provided by Pa.R.Crim.P. 229 and 42 Pa.C.S. §4549. *Id.* at 3.

After the 41st Statewide Investigating Grand Jury was empaneled and an investigation was ongoing, an OAG Special Agent and a Pennsylvania State Trooper applied to Judge Sarcione for four warrants to search and seize certain property belonging to the County. *See* Applications for Search Warrants, Reproduced Record ("R.R.") at 67a, 72a, 77a, and 82a. On September 20, 2017 and September 21, 2017, Judge Sarcione approved the warrants. *Id.* Thereafter, the OAG, in conjunction with the Pennsylvania State Police, executed the search warrants upon the Lackawanna County Prison, the Lackawanna County Community Corrections Center, the Lackawanna County Administration Building, and the Lackawanna County Center for Public Safety.[3] The OAG seized various materials pursuant to the warrants, including computers, hard drives, email servers, and other files, documents, and records. *See* Receipts/Inventory of Seized Property, R.R. at 84a-117a.

On November 9, 2017, the County filed a motion for return of property pursuant to Pa.R.Crim.P. 588.[4] Notably, the County filed its motion in the Lackawanna County Court

---

[3] We recognize the media has previously reported on certain aspects of the grand jury's investigation and Judge Sarcione has granted the OAG leave to disclose the existence and general focus of the investigation. *See* OAG's Response to County's Memorandum of Law in Support of Motion for Return, R.R. at 214a-215a. Nevertheless, because the nature of the grand jury's investigation is not relevant to the legal issues presented in this case, we do not discuss it.

[4] Rule 588 provides, in relevant part:

> A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

Pa.R.Crim.P. 588(A).

of Common Pleas, which comprises the 45th Judicial District. The matter was assigned to the Honorable John Braxton, Senior Judge of the Court of Common Pleas for the 1st Judicial District, Philadelphia County.[5]

In its motion, the County advanced a threefold argument to support its claim of entitlement to lawful possession of the seized materials. First, the County argued the underlying search warrants were unconstitutionally general and overbroad. *See* Motion for Return of Property, R.R. at 50a-53a. Second, it asserted the seizing of judicial and other governmental officials' property infringed upon various privacy interests and legal privileges. *See id.* at 54a-59a. Third, it claimed the search warrants were invalid under Pa.R.Crim.P. 200. *See id.* at 60a-62a.

With respect to this final claim, the County explained a "search warrant may be issued by any issuing authority within the judicial district wherein is located either the person or place to be searched." *Id.* at 60a, *quoting* Pa.R.Crim.P. 200. The County noted the places to be searched were all located in Lackawanna County, *i.e.*, in the 45th Judicial District, yet Judge Sarcione identified his title on the search warrants as a Court of Common Pleas Judge in the 15th Judicial District. According to the County, "[a]s a member of the 15th Judicial District — not the 45th — Judge Sarcione did not have

---

[5] As the OAG explains in its brief, Judge Braxton was appointed to hear the County's motion after the entire Lackawanna County bench recused from the matter. *See* OAG's Brief at 9 n.1. This court-wide recusal was necessitated by the fact the seized materials included copies of "emails for all agencies, departments, and institutions affiliated through the Lackawanna County email exchange server[,]" which included the Court of Common Pleas. Declaration of Michael Brown, R.R. at 119a-120a. *See also* Letter from OAG Counsel to the County, 11/3/2017, R.R. at 131a (explaining the "email exchange databases had to be seized in their entirety due to the commingling of all county employees" but asserting it did not intend to search "[t]he content of any judicial emails or communications (or any other county office or department not related to the search warrant)").

authority to issue the search warrants under Pa.R.Crim.P. 200 for items to be seized in Lackawanna County." *Id.* at 61a.

On November 13, 2017, the OAG filed a response to the County's motion. Without confirming or denying the existence of a grand jury investigation due to secrecy concerns, the OAG nevertheless challenged the lower court's jurisdiction to hear the motion for return. *See* Response to Motion for Return, R.R. at 126a-127a.[6] In support, the OAG pointed to this Court's order appointing Judge Sarcione as Supervising Judge and, in particular, the order's instruction that "[a]ll applications and motions relating to the work of the [41st] Statewide Investigating Grand Jury . . . shall be presented to the Supervising Judge." *Id.* at 127a, *quoting* Order, 12/9/2016 at 1. In the OAG's view, the order supplied Judge Sarcione with "exclusive jurisdiction" over the County's motion for return because the motion challenged search warrants issued in connection with an investigation of the 41st Statewide Investigating Grand Jury. *Id.*

Two days later the parties appeared for a hearing before the lower court. The County contested the notion Judge Sarcione had jurisdiction over the motion, arguing there is "no authority for a civil matter or a return of property [motion] to be heard by a grand jury." N.T. 11/15/2017 at 5; *see also id.* (contending a motion for return of property "does not belong in a grand jury proceeding"). The County further challenged Judge Sarcione's authority to issue the underlying search warrants, on the basis "there is nothing in the Grand Jury Act that authorizes search warrants." *Id.* at 8. In response, the OAG maintained the relevant source of authority as to both matters was this Court's December 9, 2016 order which, according to the OAG, granted Judge Sarcione "jurisdiction over all

---

[6] In its response, the OAG asserted other arguments as well, including that the County's motion was improperly filed on a miscellaneous civil docket, rather than on a criminal docket. *See* Response to Motion for Return, R.R. at 126a-127a. Before this Court, the OAG explains it has "opted not to directly pursue [this argument] on appeal." OAG's Brief at 20 n.7. Accordingly, we do not discuss it further.

counties throughout the Commonwealth" and authorized him "to handle any ancillary matters that may come up throughout the course of the grand jury conducting [its] business." *Id.* at 6. As the OAG believed the motion for return to be ancillary to the work of the 41st Statewide Investigating Grand Jury, it requested the "entire matter be sealed and transferred to Judge Sarcione." *Id.* at 7. Following oral argument, the court held the matter under advisement.[7]

On May 11, 2018, the lower court issued an opinion and order, ostensibly limited to the jurisdictional question. *See* Trial Ct. Op., 5/11/2018, at 1 ("This Opinion and Order will solely address proper jurisdiction of this matter and will not address the substantive Motion on the merits."). In sum, the court determined the Lackawanna County Court of Common Pleas, rather than the Supervising Judge of the 41st Statewide Investigating Grand Jury, had jurisdiction to adjudicate the merits of the County's motion for return of property. *Id.* at 9. In reaching this conclusion, the court reasoned Rule 588 controlled, in that it "explicitly states that a motion for return of property 'shall be filed in the [c]ourt of [c]ommon [p]leas for the judicial district in which the property was seized." *Id.* at 8, *quoting* Pa.R.Crim.P. 588(A). As additional support, the court cited *In re Seized Property of Bartholomew*, 26 Pa.D & C.4th 122 (C.P. Lehigh 1995), wherein a common pleas court judge adjudicated a motion for return of property even though the property had been seized pursuant to a search warrant issued by a statewide investigating grand jury. The lower court recognized "the issue of proper jurisdiction was not discussed" in the *Bartholomew* case, but nevertheless found that nonbinding authority "directly on point"

---

[7] At the conclusion of the hearing, the court granted the County's request to file additional briefing. The County subsequently filed a memorandum of law in support of its motion on November 22, 2017. The OAG responded on December 7, 2017, and the County filed a reply on December 15, 2017. Because the substance of the parties' supplemental briefing is reflective of the arguments they present in their briefs to this Court, which we detail below, we do not recount those arguments here.

and "persuasive." Trial Ct. Op., 5/11/2018, at 4, 9.[8] Finally, regarding the underlying search warrants issued by Judge Sarcione, the court remarked the Investigating Grand Jury Act "makes no mention of search warrants" and Pa.R.Crim.P. 200 "specifically indicates" search warrants must be issued by an issuing authority within the relevant judicial district. *Id.* at 9.

On May 21, 2018, the OAG filed an application to reconsider and to certify the court's order for immediate appeal pursuant to 42 Pa.C.S. §702(b). Simultaneously, the OAG filed in this Court a petition for permission to appeal or, in the alternative, a petition for review. The County opposed both filings.

On June 20, 2018, the lower court denied the OAG's application insofar as it sought reconsideration, but granted the OAG's request to certify the order for immediate appeal. Thereafter, this Court directed that the matter be determined upon full appellate briefing and oral argument.[9]

The OAG presents the following two issues for this Court's review:

---

[8] In contrast, the court found the OAG's reliance on *In re Investigating Grand Jury of Philadelphia (Petition of Miller)*, 593 A.2d 402 (Pa. 1991), unpersuasive. In that case, this Court considered a challenge to a search warrant issued for the purpose of obtaining evidence "for use before the grand jury[,]" but the challenge was unrelated to the judge's authority to issue the warrant. *Id.* at 404.

[9] In its brief, the County argues there is "no basis for the exercise of jurisdiction by this Court" and, instead, "appellate jurisdiction properly lies in the Commonwealth Court[.]" County's Brief at 2. We disagree. As we indicated in our order granting briefing in this matter, the lower court's ruling, which Judge Braxton certified for immediate appeal, affects an investigation conducted by the 41st Statewide Investigating Grand Jury. That being so, our jurisdiction over this appeal is secure, and our decision to permit the appeal is a matter of discretion. *See* Pa.R.A.P. 3331(a)(3) (directing that an appellate challenge to an order "directly affecting an investigating grand jury or any investigation conducted by it" is to be filed in the Supreme Court); *see also* 42 Pa.C.S. §702(b) (specifying that, upon a lower tribunal's certification of a nonfinal order, the appellate court may, "in its discretion, permit an appeal"); Pa.R.A.P. 3331(a)(5) (providing for appellate review of order affecting grand jury matters where certification per 42 Pa.C.S. §702(b) is entered).

1. Did the lower court err in ruling it had the authority to address Lackawanna County's motion for return of property concerning property seized pursuant to warrants issued by the supervising judge of the [41st] Statewide Investigating Grand Jury, when the Supervising Judge had exclusive authority to hear Lackawanna County's Motion?

2. Whether, as a preliminary matter, the Supervising Judge of the [41st] Statewide Investigating Grand Jury had the authority to issue the search and seizure warrants executed in this matter, when the Supervising Judge has statewide authority with respect to the grand jury investigations he oversees, including the investigation associated with the warrants in this case?

OAG's Brief at 4. We address these legal questions on a plenary basis, and to the extent we must engage in statutory interpretation and analysis of our own procedural rules, we apply conventional interpretative principles. *See In re Fortieth Statewide Investigating Grand Jury*, 191 A.3d 750, 756 (Pa. 2018).

## II. Arguments of the Parties

The OAG maintains Judge Sarcione, in his capacity as Supervising Judge, has exclusive authority to address the County's motion for return because it relates to property seized through search warrants issued in connection with an investigation of the 41st Statewide Investigating Grand Jury. *See* OAG's Brief at 14. As the OAG sees it, the lower court erroneously reached the opposite conclusion because it failed to "understand how supervising judges' authority conforms with the various statutes, rules, and orders involved in the underlying legal actions here." *Id.*

In this regard, the OAG begins by outlining what it believes to be the source of Judge Sarcione's authority to adjudicate the motion for return of property. It primarily points to this Court's December 9, 2016 order appointing Judge Sarcione as Supervising Judge — specifically, the order's instruction that "'[a]ll applications and motions relating to the work of the [41st] Statewide Investigating Grand Jury . . . shall be presented to the

Supervising Judge.'" OAG's Brief at 21, *quoting* Order, 12/9/2016, at 1. The OAG explains the County's motion for return, like the search warrants upon which the motion is premised, relate to the work of the 41st Statewide Investigating Grand Jury. As such, the OAG concludes this Court's own directive requires that the motion "'shall be presented to the Supervising Judge.'" *Id.* at 22, *quoting* Order, 12/9/2016, at 1.

The OAG proceeds to address the lower court's treatment of Pa.R.Crim.P. 588. It argues the lower court wrongly concluded Rule 588 prevents Judge Sarcione from addressing the motion for return since, in its view, the Rule does nothing more than dictate venue. *See* OAG's Brief at 24-27. Thus, the OAG explains, while on its face the Rule requires that a motion for return shall be filed in the court of common pleas for the judicial district in which the property was seized — *i.e.*, in Lackawanna County — "this does not prevent the Supervising Judge from hearing the motion or from it being 'presented to the Supervising Judge.'" *Id.* at 22, *quoting* Order, 12/9/2016, at 1. The OAG insists there is "no conflict" between Rule 588(A) and this Court's directive that all motions relating to the work of the 41st Statewide Investigating Grand Jury shall be presented to Judge Sarcione. *Id.*

From that premise the OAG prescribes two mechanisms that it believes would effectuate the intent of this Court's order while simultaneously adhering to Rule 588(A). First, it argues Judge Sarcione is authorized to hear the County's motion for return as filed in Lackawanna County. *Id.* at 23. This is permissible, the OAG contends, because this Court's order supposedly granted Judge Sarcione statewide jurisdiction with regard to any matters concerning the work of the 41st Statewide Investigating Grand Jury and he therefore "has the same jurisdictional authority over Lackawanna County as any judge of the 45th Judicial District[.]" *Id.* Alternatively, the OAG posits there is "no legal obstacle preventing the matter from being [ ] transferred to the docket associated with the

underlying grand jury investigation." *Id.* at 24. It notes that proceeding in this manner would be consistent with other Pennsylvania Rules of Procedure that dictate a default venue but also permit transfer to a different venue when the law and circumstances of a case warrant. *See id.* at 24-27, *citing* Pa.R.Crim.P. 130 and Pa.R.Civ.P. 1006. In short, the OAG asserts Rule 588(A) "merely defaults to the reasonable position that a motion involving the return of property should be filed in the Common Pleas court where the property is located[,]" but it "does not prevent transfer of the matter to some other forum when such transfer is legally warranted." *Id.* at 26-27.

Having concluded Judge Sarcione possesses exclusive jurisdiction to address the motion for return of property and that Rule 588(A) does not operate to prevent or constrict that authority, the OAG continues that the lower court's contrary decision undermines the fundamental principles associated with the proper functioning of statewide investigating grand juries. *See id.* at 27-30. Relying on this Court's longstanding recognition that "[t]he secrecy of grand jury proceedings is indispensable to the effective functioning of a grand jury[,]" and this compelling need for secrecy "call[s] for a strong judicial hand in supervising the proceedings[,]" *In re Dauphin County Fourth Investigating Grand Jury*, 19 A.3d 491, 502-03 (Pa. 2011) (internal quotations and citations omitted), the OAG claims these principles will be frustrated if Judge Sarcione is prevented from adjudicating the motion for return. *See* OAG's Brief at 31. This is so, the OAG argues, because it will be limited if not entirely barred from effectively responding to the substance of the County's motion, as it implicates protected grand jury material. *See* OAG's Brief at 31. Although the OAG concedes it may seek a disclosure order from Judge Sarcione to discuss some of the otherwise-secret matters with the lower court and the County, it stresses that "given the need to ensure an [e]ffective ongoing investigation, which may be targeting parties to the underlying motion or their affiliates, any disclosure may need to be limited." *Id.* The

OAG submits the lower court's decision creates "a cumbersome process ripe for the unwarranted divulgence of secret information[,]" and it deems that burdensome process "wholly unnecessary . . . and antithetical to the fundamental principles governing grand jury practice." *Id.* at 31-32.

Finally, the OAG proffers that there is a limit to a supervising judge's authority to entertain a motion for return of property relating to a search warrant issued in connection with a grand jury investigation. *See id.* at 32-33. Specifically, it suggests this rule applies only when there is an ongoing grand jury investigation or where grand jury secrecy concerns are present; absent these conditions, the OAG sees no reason why a motion for return of property could not be heard by a non-grand jury judge. *See id.*

Turning next to the issue of the search warrants, the OAG again identifies this Court's order appointing Judge Sarcione as Supervising Judge as the authority permitting him to issue search warrants statewide. It argues the order, which tracks the language of 42 Pa.C.S. §4544(b)(2), states Judge Sarcione "(1) shall have jurisdiction over all counties throughout the Commonwealth, (2) including "'[w]ith respect to **investigations**, presentments, reports, and all other proper activities of [the Grand Jury].'" OAG's Brief at 35, *quoting* 42 Pa.C.S. §4544(b)(2) (emphasis supplied by the OAG). Thus, according to the OAG, Judge Sarcione had statewide jurisdiction with respect to any investigative activity of the 41st Statewide Investigating Grand Jury. *See id.*

Working from that assumption, the OAG argues that "[be]cause Judge Sarcione had explicit statewide jurisdiction over all the Grand Jury's investigations, he was an 'issuing authority' in Lackawanna County" as understood by Pa.R.Crim.P. 200. *See id.* at 36, *citing* Pa.R.Crim.P. 200, cmt. ("[a]ny judicial officer who is authorized to issue a search warrant and who issues a warrant is considered an 'issuing authority' for purposes of this rule"). In support of its position an "issuing authority" under Rule 200 is not limited

to judicial officers whose commissions are linked to the judicial district where the property or person to be searched or seized is located, the OAG points to other examples where issuing authorities have been empowered to authorize search warrants in judicial districts where they do not normally sit. *See id.* at 36-37 (comment to Rule 200 acknowledges power of appellate court judges and justices to issue search warrants anywhere in Pennsylvania); *id.* at 37-39 (discussing collaborative agreements between judicial districts which permit visiting active judges and district justices to issue search warrants in judicial districts outside the one in which they sit). These examples, the OAG asserts, prove there is "nothing remarkable" about judges issuing search warrants outside their own judicial district, "so long as their authority [to do so] is otherwise legally authorized." *Id.* at 37. As described, the OAG believes this Court's order and 42 Pa.C.S. §4544(b)(2) provided Judge Sarcione with such legal authority, and it consequently faults the lower court to the extent it agreed with the County that Rule 200 prohibited Judge Sarcione from issuing the underlying search warrants.

The OAG also challenges the County's argument below that Judge Sarcione could not issue the search warrants on the basis that, under the Investigating Grand Jury Act, search warrants are not identified as an investigative resource of the grand jury and the issuance of search warrants is not mentioned as a power of the grand jury. *See* OAG's Brief at 41, *citing* 42 Pa.C.S. §4542 (investigative resources of the grand jury) and 42 Pa.C.S. §4548(a) (powers of investigating grand jury). As the OAG puts it, the County's argument is "fundamentally flawed" because it misunderstands the nature and purpose of investigating grand juries. *Id.* On this point, the OAG explains the powers of an investigating grand jury delineated in the Investigating Grand Jury Act "are **in addition to** the investigative resources and powers otherwise available to law enforcement in a criminal investigation." *Id.* (emphasis in original); *see also id.* at 42 ("the investigative

resources of the grand jury set forth the legal mechanisms which enable grand juries to gather potentially valuable evidence that may be otherwise inaccessible to law enforcement absent the power of a grand jury to acquire it"). The OAG asserts these additional resources advance the core purpose of the Investigating Grand Jury Act by enabling the Commonwealth to investigate and prosecute crimes which may otherwise go undetected; they do not, however, circumscribe the ordinary investigative tools and techniques that law enforcement may employ in the course of a criminal investigation. *See id.* at 42. In sum, the OAG argues search warrants are just one of many ordinary investigative tools available to law enforcement in a criminal investigation, and nothing in the Investigating Grand Jury Act precludes their use to further a grand jury investigation. *See id.* at 42-43.

The County quite naturally disputes the OAG's position on both issues. Regarding who may properly decide the motion for return of property, the County argues this issue is "squarely and completely resolved" by Rule 588(A), because it directs that motions for return shall be filed where the property was seized. County's Brief at 15-16. The County submits there is nothing in this Court's order appointing Judge Sarcione as Supervising Judge, or in the Investigating Grand Jury Act, that creates an exception to the procedure outlined in Rule 588(A). *See id.* at 17.

On a more foundational level, the County challenges the OAG's interpretation of the powers granted to Judge Sarcione. While the County acknowledges this Court's order conferred upon Judge Sarcione statewide jurisdiction, it argues this jurisdiction extends only to "investigations, presentments, reports, and **all other proper activities** of said investigating multicounty grand jury." *Id.* at 17, *quoting* 42 Pa.C.S. §4544(b)(2) (emphasis supplied by the County). In the County's view, a motion for return of property "cannot in any way be deemed a 'proper activity' of an investigating grand jury." *Id.* In a similar way,

the County contests the OAG's understanding of the separate directive in this Court's order that all applications and motions relating to the work of the 41st Statewide Investigating Grand Jury shall be presented to Judge Sarcione. According to the County, its motion for return "does not reference or implicate grand jury testimony or any proceeding before the grand jury and therefore does not relate to 'the work' of the grand jury." *Id.* at 18.

As for the OAG's suggestion that transferring the motion for return of property from Lackawanna County to Judge Sarcione would comply with both this Court's order and Rule 588(A), the County argues that employing such a procedure would be inappropriate for several reasons. For one thing, the County claims this procedure, which amounts to a request for change of venue, is waived because the OAG never requested a change of venue in the lower court. *See id.* at 18-19. The County argues, even if the OAG had not waived this claim, the Pennsylvania Rules of Procedure cited by the OAG — including Pa.R.Crim.P. 130 and Pa.R.Civ.P. 1006 — "do not apply and are not satisfied here." *Id.* at 19. From the County's perspective, the OAG failed to develop a factual record necessary to satisfy any standard for a change of venue, and thus there is no support in the record for such a change. *See id.* at 19-20.

Finally, to the extent the OAG invokes grand jury secrecy as support for its position that Judge Sarcione is empowered to address the motion for return of property, the County submits this is a red herring since the County's motion "does not address or implicate any secret grand jury matters." *Id.* at 20. The County submits the execution of the warrants was a "very public event that attracted wide attention and publicity[,]" and it generally avers "there is nothing secret about the events that are the subject of the motion for return of property." *Id.* at 20-21. Moreover, the County continues, the motion for return advances facial and threshold legal challenges to the seizures "that do not implicate or

require consideration of any matters that occurred before the grand jury." *Id.* at 21. The County reasons that because the OAG has not substantiated its asserted need for secrecy, "it can only be concluded that secrecy is not a legitimate basis to reassign the motion for return of property." *Id.* at 22.

Moving to the second issue concerning Judge Sarcione's authority to issue the underlying search warrants, the County cites Pa.R.Crim.P. 200 as dispositive. The County interprets Rule 200 as endowing a judge with authority to issue search warrants only in the locality from which he or she was elected. *See id.* at 23. In this case, since Judge Sarcione was elected in Chester County, the County argues it necessarily follows that he lacked authority to issue warrants in Lackawanna County. *See id.* Furthermore, the County rejects the OAG's attempt to analogize Judge Sarcione's powers as Supervising Judge to those of appellate judges, who undoubtedly may "issue search warrants anywhere within the state." Pa.R.Crim.P. 200, cmt. The County argues the statewide jurisdiction afforded to appellate judges is easily distinguishable, as they are elected to statewide office, whereas Judge Sarcione was not. *See* County's Brief at 26 n.10. As well, the County summarily discards the OAG's reference to collaborative arrangements between counties which permit visiting judges to exercise the same power and authority as judges in the assigned district, because Lackawanna County is not party to any such agreement. *See id.* at 26.

The County finally dismisses the OAG's argument the Investigating Grand Jury Act and this Court's order appointing Judge Sarcione as Supervising Judge conferred upon him the power to issue search warrants coextensive with the jurisdiction of the 41st Statewide Investigating Grand Jury. As the County explains, the Investigating Grand Jury Act provides the investigating resources of the grand jury "shall include but not be limited to the power of [ ] subpoena, the power to obtain the initiation of civil and criminal

contempt proceedings, and every investigative power **of any grand jury** of the Commonwealth." *Id.* at 24, *quoting* 42 Pa.C.S. §4548(a) (emphasis supplied by the County). *See also* 42 Pa.C.S. §4542 (describing the investigative resources of the grand jury). The County asserts that, since grand juries have no statutory authority to issue search warrants, the Investigating Grand Jury Act "does not trump or supplant Rule 200." *Id.* Similarly, the County argues that even though Section 4544(b)(2) and this Court's order granted Judge Sarcione statewide jurisdiction over all "proper activities" of the grand jury, the issuance of search warrants is not a "proper activity" of a grand jury and, consequently, "this section does nothing to enlarge the scope of authority conferred by Rule 200." *Id.* at 24-25. For these reasons, the County deems irrelevant the OAG's description of search warrants as ordinary investigative tools that may be used in addition to the express statutory powers conferred to investigating grand juries. *See id.* at 25. Whether this is true "changes nothing[,]" the County concludes, because Judge Sarcione "had no power under Rule 200 or any other rule or statute to issue a warrant in any other county." *Id.*[10]

### III. Analysis

We find it helpful to address the issues presented in reverse order. We thus begin by considering whether Judge Sarcione, as Supervising Judge of the 41st Statewide

---

[10] The Pennsylvania Association of Criminal Defense Lawyers ("PACDL") has filed an *amicus curiae* brief in support of the County focusing "solely on the statutory construction of 42 Pa.C.S. §4548 and 42 Pa.C.S. §4542 and whether the Act grants to a supervising judge . . . the authority to issue a search warrant." PACDL's Brief at 8. As the County does, PACDL concludes "the statutory powers of an investigating grand jury do not include the power to issue search warrants." *Id.* The OAG responds to both the County's and PACDL's arguments in its Reply Brief, wherein it reiterates many of the points raised in its principal brief.

Investigating Grand Jury, had authority to issue the search and seizure warrants for the County's property.[11]

### a. *Authority to Issue Search Warrants*

Article V of the Pennsylvania Constitution establishes a unified judicial system vested with the judicial power of the Commonwealth. PA. CONST. art. V, §1. Although the Constitution does not enumerate every specific power inherent in courts and incidental to the grant of judicial authority under Article V, the Judicial Code serves to codify some of these non-particularized powers. Section 323 of the Judicial Code provides:

> Every court shall have power to issue, under its judicial seal, every lawful writ and process necessary or suitable for the exercise of its jurisdiction and for the enforcement of any order which it may make and all legal and equitable powers required for or incidental to the exercise of its jurisdiction, and, except as otherwise prescribed by general rules, every court shall have power to make such rules and orders of court as the interest of justice or the business of the court may require.

42 Pa.C.S. §323. Section 912 of the Judicial Code similarly establishes that every court of common pleas "shall have power to issue, under its judicial seal, every lawful writ and process . . . as such courts have been heretofore authorized by law or usage to issue[,]"

---

[11] We recognize the issue of whether Judge Sarcione was empowered to authorize the underlying search warrants arguably goes to the merits of the County's motion for return of property, and yet the lower court purported to "solely address proper jurisdiction." Trial Ct. Op., 5/11/2018, at 1. However, it seems clear to us the lower court implicitly decided the search warrant issue as well. *See id.* at 9 (concluding Pa.R.Crim.P. 200 and the absence of any mention of search warrants in the Investigating Grand Jury Act "support [the] County's position"). In any event, the parties have ably addressed the issue, and all recognize it is inseparably intertwined with the jurisdictional question presented. *See, e.g.,* OAG's Brief at 33 (the lower court's apparent agreement with the County on the search warrant issue "contributed to the Court's ultimate ruling" and "warrants addressing here"); County's Brief at 22-23 (the OAG's arguments regarding jurisdiction are "premised on the assumption that Judge Sarcione had authority to issue the warrants in the first place"); PACDL's Brief at 7 (the "core issue before this Court" is whether the power to issue search warrants is a power of the investigating grand jury; "[a]ll other matters . . . are ancillary to that main issue"). For these reasons, we proceed to address both matters presented.

and every judge of a court of common pleas "shall have all the powers of a judge or magisterial district judge of the minor judiciary." 42 Pa.C.S. §912. And Section 1515 of the Judicial Code expressly states magisterial district judges shall have jurisdiction "to issue warrants and perform duties of a similar nature[.]" 42 Pa.C.S. §1515(a)(4); *see also* 42 Pa.C.S. §1123(a)(5) (same with regard to Philadelphia Municipal Court judges). Taken individually or together, these statutes make clear the issuance of a search warrant is a judicial power granted to common pleas court judges, among others.

However, the judicial power to issue search warrants is not without limits. As the Superior Court observed more than thirty years ago, "the issuance of a search warrant is subject to the power of the Supreme Court to govern court procedures." *Commonwealth v. Dumont*, 536 A.2d 342, 347-48 (Pa. Super. 1987).[12] And, in fact, this Court, being reposed with the supreme judicial power of the Commonwealth, including the power to prescribe general rules governing practice, procedure, and the conduct of all courts, *see* PA. CONST. art. V, §§2, 10, has on multiple occasions exercised its rule-making power and adopted a number of rules pertaining to search warrants. *See, e.g.*, Pa.R.Crim.P. 200-212. Most germane to the present issue, and the subject of competing interpretations by the parties, is Rule 200. This Rule, as noted, provides that "[a] search warrant may be issued by any issuing authority within the judicial district wherein is located either the person or place to be searched." Pa.R.Crim.P. 200.

---

[12] The *Dumont* Court explained its categorization of the issuance of a search warrant as procedural flowed from the definition of "legal process," sometimes referred to as "lawful process," which "'means a summons, writ, **warrant**, mandate or other process issuing from a court." 536 A.2d at 347, *quoting* Black's Law Dictionary at 1085 (5th Ed. 1979) (emphasis supplied by Superior Court). We note the Judicial Code provides a similar definition of "process." *See* 42 Pa.C.S. §102 (defining "process" as a "document evidencing a command of a court or of a magisterial district judge"). This Court has also generally recognized "the decision to issue a search warrant is a judicial decision." *PG Pub. Co. v. Com.*, 614 A.2d 1106, 1108 (Pa. 1992).

Generally, Rule 200 permits common pleas court judges to issue search warrants only in the judicial district in which they sit and only so long as the person or place to be searched is located within that judicial district. This conclusion necessarily follows from the Rule's express language, which tethers "issuing authority" — defined under Pa.R.Crim.P. 103 as "any public official having the power and authority of a magistrate, a Philadelphia arraignment court magistrate, or a magisterial district judge" — to the phrase "within the judicial district wherein is located either the person or place to be searched." Pa.R.Crim.P. 200. In this way, the Rule restricts the territorial jurisdiction in which an issuing authority may issue a search warrant to the judicial district in which the issuing authority sits, the parameters of which are generally the county. *See* 42 Pa.C.S. §901(a) (establishing boundaries of judicial districts).[13]

This is not to say, however, that the definition of an "issuing authority within the judicial district" is strictly limited to officials whose commissions are linked to the judicial district where the property or person to be searched is located. *See* County's Brief at 23 (arguing a judge can only issue search warrants in "the locality from which he or she was elected"). Rather, we agree with the OAG that the inquiry more broadly turns on "whether the issuing authority in question has the power to issue the warrant in the particular judicial

---

[13] We say "restricts" because there is some authority supporting the notion that, absent statutory or procedural rules to the contrary, a common pleas court judge's inherent judicial power to issue a search warrant extends statewide. *See* WASSERBLY, MOORE, & SCHNEIDER, WEST'S PA. PRAC., CRIMINAL PRACTICE §19:9 ("In view of *Commonwealth v. McPhail*, 692 A.2d 139 (Pa. 1997) (plurality opinion), which discussed the statewide jurisdiction of the court of common pleas under Article 5, §1, of the Pennsylvania Constitution in a 'unified judicial system,' the power of a court of common pleas to issue warrants may theoretically extend outside its judicial district."); *see also Commonwealth v. Ryan*, 400 A.2d 1264 (Pa. 1979) (recognizing a magisterial district judge has "at least" county-wide jurisdiction and therefore has power to issue a search warrant outside of the magisterial district but within the judicial district). *But see* 42 Pa.C.S. §931 (explaining the process of the courts of common pleas "shall extend beyond the territorial limits of the juridical district[,]" but only "to the extent prescribed by general rule").

district." OAG's Brief at 36. *See* Pa.R.Crim.P. 200, cmt. ("Any judicial officer who is authorized to issue a search warrant and who issues a warrant is considered an 'issuing authority' for purposes of this rule."). Indeed, as the OAG aptly notes by way of example, this Court has expressly authorized president judges in certain judicial districts to assign judges to sit in districts where they were not elected, and those judges so assigned are empowered with the same rights as any other jurist in that district. *See* 204 Pa. Code §§29.101-29.105 (approving inter-judicial-district assignments to promote continuous judicial coverage and granting assigned judges "the same power and authority as are vested in a judge or district justice of the assigned district"). In a similar way, judges temporarily assigned from one judicial district to another pursuant to this Court's broad powers to make such assignments, *see* PA. CONST. art. V, §10(a) and Pa.R.J.A. 701(C)(2), are authorized to "hear and determine any matter with like effect as if duly commissioned to sit in such other court." 42 Pa.C.S. §4121(a). These examples serve to highlight that there are multiple ways in which an issuing authority may come to be "within the judicial district" for purposes of Rule 200.

The relevant question that remains, then, is whether Judge Sarcione, in his role as Supervising Judge of the 41st Statewide Investigating Grand Jury, was authorized to act in Lackawanna County. We conclude he was, and that his authority derived from this Court's order appointing him as Supervising Judge. Notably, our order expressly granted Judge Sarcione jurisdiction over all counties in the Commonwealth "[w]ith respect to **investigations**, presentments, reports, and all other proper activities of the [41st] Statewide Investigating Grand Jury[.]" Order, 12/9/2016, at 1-2 (emphasis added). In our view, this grant of statewide jurisdiction relative to "investigations" was sufficiently broad to include within its scope the power to issue search warrants sought in connection with and to further an investigation of the 41st Statewide Investigating Grand Jury.

The County's arguments do not undermine this conclusion. The County focuses its efforts on explaining why the issuance of a search warrant is not a "proper activity" of the grand jury. *See, e.g.*, County's Brief at 24 (discussing 42 Pa.C.S. §§4542 and 4548(a) and concluding "[g]rand juries have no statutory authority to issue warrants"). Not only does this argument ignore the fact that this Court granted Judge Sarcione statewide jurisdiction with respect to "investigations" generally, but it also betrays a fundamental misunderstanding of the question involved. The issue is not, as the County contends, whether investigating grand juries have the power to issue search warrants; it is whether the judges who supervise grand juries possess that power. As we have explained, all common pleas court judges in this Commonwealth inherently possess the power to issue search warrants, subject only to this Court's power to govern court procedures. Nothing in the Investigating Grand Jury Act alters this paradigm or restricts the inherent powers of supervising judges. *See In re Investigating Grand Jury of Philadelphia County (Appeal of Drapczuk)*, 433 A.2d 5, 6-7 (Pa. 1981) (concluding 42 Pa.C.S. §4548(a) "in no respect provides, even implicitly, that the power[s] set forth [in the statute] are either exclusive to the grand jury or intended to displace valid, fundamental powers of the court").

Relatedly, we agree with the OAG that the Investigating Grand Jury Act is intended to expand, rather than narrow, the arsenal of investigative tools at the Commonwealth's disposal when conducting an investigation. The Act implicitly recognizes this principle by requiring the attorney for the Commonwealth to allege, prior to submitting an investigation to the grand jury, "that one or more of the investigative resources of the grand jury are required in order to adequately investigate the matter." 42 Pa.C.S. §4550(a). We have commented this imposition of a jurisdictional predicate that "the normal law enforcement resources of [the Commonwealth] must be inadequate" before an investigation may be submitted to a grand jury is "[c]entral to the Act's purpose[.]" *In re County Investigating*

*Grand Jury of April 14, 1981 (Appeal of Krakower)*, 459 A.2d 304, 307 (Pa. 1983). It seems obvious that central purpose is to supply the Commonwealth with **additional** investigative tools — *i.e.*, the powers and investigative resources of the grand jury — so that it may ferret out criminal activity not otherwise able to be detected or effectively pursued through traditional law enforcement techniques alone. *See, e.g., id.* ("the investigating grand jury has been given resources to enable it to investigate and gather evidence otherwise unobtainable"); W.R. LaFave *ET AL.*, Criminal Procedure, §8.1(a) ("Utilizing its investigative authority, the grand jury uncovers evidence not previously available to the prosecution, and thereby provides the sword that enables the government to secure convictions that might otherwise not be obtained."). There was thus nothing improper about the OAG's practice of obtaining the search warrants from Judge Sarcione where its purpose was to further an ongoing investigation of the 41st Statewide Investigating Grand Jury.[14]

In conclusion, we hold that where this Court appoints a common pleas court judge to supervise a multi-county or statewide investigating grand jury and empowers the judge

---

[14] *Amicus* PACDL suggests the Commonwealth should not be able to seek search warrants in the context of a grand jury investigation because "the subpoena duces tecum mechanism can be utilized to procure the same information." PACDL's Brief at 25. *See* 42 Pa.C.S. §4542 (including "the power to require the production of documents, records and other evidence" as an investigative resource of the investigating grand jury). To be sure, the "basic advantage of the grand jury stems from its ability to use the subpoena authority of the court" which, among other benefits over a search warrant, can issue without a showing of probable cause. LaFave, *supra* at §8.3(a). But notwithstanding the advantages a subpoena offers, in certain investigations a search warrant may still be preferable or even necessary. *See id.* at §8.3(c) n.19 (listing the benefits of search warrants as compared to subpoenas, such as eliminating the possibility the party in possession may destroy, conceal, or alter documents). The unique advantages offered by each investigative tool underscore why the Commonwealth may properly employ either or both in relation to a grand jury investigation. *See id.* at §8.8(g) ("Since searches and subpoenas offer different advantages, prosecutors may appropriately use both search warrants and subpoenas to obtain related material in the same investigation, sometimes from the same party.").

to act in multiple judicial districts, that grant of authority includes the inherent power to issue search warrants in any of those districts, so long as the warrants relate to an investigation of the grand jury. Under those circumstances, the supervising judge is an "issuing authority" in those judicial districts as defined by Pa.R.Crim.P. 200. Here, Judge Sarcione possessed statewide jurisdiction with respect to all investigations of the 41st Statewide Investigating Grand Jury, and the search and seizure warrants for the County's property related to one of those investigations. Accordingly, Judge Sarcione was empowered to authorize the warrants.[15]

### b. Authority to Hear Motion for Return of Property

We now consider who may properly address the County's motion for return of property and we find the answer to this question is relatively simple: because the motion for return challenges the search warrants issued by Judge Sarcione, which in turn relate to the work of the 41st Statewide Investigating Grand Jury, the motion must be presented to Judge Sarcione in the first instance.

This conclusion directly follows from the language in this Court's order appointing Judge Sarcione as Supervising Judge. Once more, that order instructs "[a]ll applications and motions relating to the work of the [41st] Statewide Investigating Grand Jury — including motions for disclosure of grand jury transcripts and evidence — shall be presented to the Supervising Judge." Order, 12/9/2016, at 1.[16] The breadth of this directive is sweeping, covering all applications and motions generally relating to "the

---

[15] To be clear, we hold only that Judge Sarcione was authorized to issue the search and seizure warrants for the County's property. We do not address any other challenges to the validity of the warrants raised in the County's motion for return of property.

[16] Parenthetically, we note this particular directive is not required by the Investigating Grand Jury Act. *See* 42 Pa.C.S. §4544(b) (mandating the inclusion of certain content in order convening multicounty investigating grand jury, but also explaining that "[a]ll matters to be included in such order shall be determined by the justice issuing the order in any manner which he deems appropriate").

work" of the 41st Statewide Investigating Grand Jury. Although the County disputes that its motion fits within this category because it "does not reference or implicate grand jury testimony or any proceeding before the grand jury[,]" County's Brief at 18, the directive's scope is not as narrowly tailored as the County describes. Rather, under its plain terms, it applies broadly to any application or motion "relating to the work" of the grand jury. The County's motion for return of property falls within this reach, as it challenges the validity of the search warrants issued in connection with an investigation of the 41st Statewide Investigating Grand Jury and, if successful, the County's motion would deprive the grand jury of the very evidence it seeks to consider to further its investigation.

Moreover, under the County's view, parties could seek to obtain indirectly through the motion for return process that which they clearly would be prohibited from obtaining directly due to grand jury secrecy concerns. Indeed, despite the County's assertion at the hearing before the lower court that it does not "seek the affidavit[s] of probable cause" supporting the search warrants, N.T. 11/15/2017 at 7, the County pointedly argued in its motion for return that "[t]he search warrants are not carefully tailored, **supported by probable cause**, nor circumscribed with particular exactitude." Motion for Return of Property, R.R. at 59a (emphasis added); *see id.* at R.R. 53(a) (declaring the search warrants unconstitutional "for their lack of particularity and their overbreadth"). These claims are undoubtedly aimed at the sealed affidavits of probable cause supporting the issuance of the search warrants, and a court will necessarily have to examine the probable cause basis set forth in those affidavits to adequately address the County's contentions. *See, e.g.*, *Commonwealth v. Waltson*, 724 A.2d 289, 230 (Pa. 1998) (rejecting overbreadth challenge and explaining that "where probable cause exists to support the search of the area so designated, a warrant will not fail for lack of particularity") (citation omitted); *Commonwealth v. Grossman*, 555 A.2d 896, 900 (Pa.

1989) ("[I]n any assessment of the validity of the description contained in a warrant, a court must initially determine for what items probable cause existed. The sufficiency of the description must then be measured against those items for which there was probable cause."). Consequently, the OAG's concern the County's motion for return will intrude upon protected grand jury matters is not merely theoretical; it is a certainty. And that is precisely why the Supervising Judge of the 41st Statewide Investigating Grand Jury must be the one to entertain it. *See generally In re Dauphin County Fourth Investigating Grand Jury*, 19 A.3d at 504 (explaining "the supervising judge has the singular role in maintaining the confidentiality of grand jury proceedings").[17]

Our final task is to determine the proper manner in which a motion for return of property relating to a search or seizure made in connection with a grand jury investigation is to be presented to the supervising judge of the grand jury. We find the most logical course in such circumstances is for the aggrieved party to file the motion in the court of common pleas for the judicial district in which the property was seized, as Pa.R.Crim.P. 588(A) demands, and for the Commonwealth to then move to have the matter as filed on that docket presented to the supervising judge.

---

[17] Even if the County had not argued in its motion that it was challenging the search warrants on overbreadth or particularity grounds, we would reach the same result. Artful legal drafting cannot avoid the fact that, at bottom, any challenge to a search warrant issued in connection with an investigating grand jury affects the work of the grand jury and may require delving into secret grand jury matters. *See generally In re Fortieth Statewide Investigating Grand Jury*, 191 A.3d at 762 n.21 ("[T]o be effective, secrecy must extend to some range of matters beyond what happens before the grand jury in a grand jury room."); SARA SUN BEALE & WILLIAM C. BRYSON, GRAND JURY LAW & PRACTICE, §5.6 ("If the disclosure of the documents in context reveals something about the grand jury's investigation, the policy of grand jury secrecy has been breached regardless of whether the documents on their face related directly to the grand jury's activities."). In fact, since a motion for return necessarily requests relinquishment of the seized property, the rules governing secrecy will be directly implicated where the seized property has already been presented to the grand jury. *See, e.g.*, Pa.R.Crim.P. 229 (requiring supervising judge to establish procedures for supervising custody "[w]hen physical evidence is presented before the investigating grand jury").

As we have said, when this Court grants supervising judges multi-county or statewide jurisdiction, they maintain the same power and authority as are vested in judges of the district where the search occurred and the motion for return is filed, at least with respect to matters relating to the grand jury's investigation. In this sense, a supervising judge has the same jurisdictional authority over the relevant county as any other judge in that district, and should exercise that jurisdiction to address the motion for return as originally filed on the appropriate common pleas court docket. If, upon being presented with the motion the supervising judge determines there are no outstanding concerns for grand jury secrecy — perhaps because the term of the grand jury has expired or an indictment has already issued — the judge may decline to hear the motion and it may instead be considered in the normal course under applicable rules and procedures.

This approach best accommodates Rule 588, our intent that all matters relating to the work of a grand jury be presented to the supervising judge, and the secrecy concerns attendant to grand jury matters. It also serves to further judicial economy. As this case demonstrates, any alternative to the supervising judge addressing a motion for return in the first instance will likely result in unnecessary delay caused by the Commonwealth's need to obtain permission from the supervising judge to disclose otherwise-secret grand jury material. This delay and uncertainty regarding what may be revealed in response to a motion for return is eliminated if the matter is first presented to the supervising judge, who is uniquely tasked with guarding the confidentiality of such matters. Accordingly, we conclude that when a motion for return concerns a search or seizure made in connection with a grand jury investigation, it is the supervising judge of that grand jury who must

initially consider it, doing so upon the docket on which it was originally filed in the relevant county.[18]

## IV. Conclusion

In his role as Supervising Judge of the 41st Statewide Investigating Grand Jury, Judge Sarcione was empowered to issue search warrants in any judicial district, provided that the warrants related to an investigation of the 41st Statewide Investigating Grand Jury. Because there is no dispute the search and seizure warrants for the County's property related to such an investigation, Judge Sarcione was authorized to issue them. Further, because the County's motion for return of property challenges the validity of those search warrants, it relates to the work of the 41st Statewide Investigating Grand Jury and must be presented to the Supervising Judge, who shall adjudicate the motion or conclude it does not raise grand jury secrecy concerns. As the lower court reached the opposite conclusions, we vacate its order and remand for proceedings consistent with this Opinion.

Chief Justice Saylor and Justices Baer, Wecht and Mundy join the opinion.

Justice Donohue files a dissenting opinion in which Justice Todd joins.

---

[18] Based on our disposition, we decline to endorse the OAG's alternative proposal to allow motions for return of property to be transferred to the docket associated with the underlying grand jury investigation. Our procedural rules do not contemplate the process envisioned by the OAG, and crafting a procedural mechanism of that scale is a function more appropriately reserved for our Criminal Procedural Rules Committee. Along those same lines, we believe it would be prudent for the Criminal Procedural Rules Committee to consider adopting a procedure requiring motions for return relative to property seized per warrants issued by a grand jury supervising judge to be filed on the docket for the grand jury investigation in the county in which the grand jury has been empaneled. In our view, such a procedure, if feasible, would most effectively facilitate this Court's intent that matters relating to grand jury proceedings be directed to the supervising judge. For now, we see no impediment to a supervising judge simply entertaining a motion for return as filed on the docket in the relevant county. Indeed, as the OAG points out, the County does "not address or contest" this proposed course. *See* OAG's Reply Brief at 13 n.4.